# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ALICIA VELÁZQUEZ-VÉLEZ *et al.*,

    **Plaintiffs,**

        **v.**

CARLOS MOLINA-RODRÍGUEZ,
*et al.*,

    **Defendants.**

**Civil No.** 15-1126 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Defendants Municipality of Arecibo ("Arecibo"), Carlos Molina-Rodríguez ("Molina"), Wesley Rivera ("Rivera"), Edgardo Pérez-Pérez ("Pérez"), Hiram Cruz-González, Luis Cruz-Nieves, and Janet Rodríguez-Colón ("Rodríguez") (collectively, "defendants"), in their official and personal capacities, move for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). (Docket Nos. 111 and 112.) For the reasons set forth below, the defendants' motion for summary judgment is **DENIED IN PART** and **GRANTED IN PART**.

## I. Background

This litigation arises from allegations of political discrimination. (Docket No. 102.) The following facts are deemed admitted by both parties pursuant to Local Rule 56. Loc. R. 56(e);

P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130-31 (1st Cir. 2010) (citing Loc. R. 56(e)).[1]

Molina won the 2012 mayoral election in Arecibo as the candidate for the Partido Nuevo Progresista ("PNP"). (Docket No. 111, Ex. 30 at p. 5.)[2] When Molina assumed office, plaintiffs Alicia Velázquez-Vélez ("Velázquez"), Emma Vélez-Serrano, Johanna Homs-Zeno ("Homs"), Luís Ocaña-Rivera ("Ocaña"), María Rivera-Román, Saúl Vélez-Rodríguez, Héctor Román-Ortiz, Edwin Denis-Mercado ("Denis"), Santos Tobi-Molina ("Tobi"), and Julissa Marrero-Román ("Marrero") (collectively, "plaintiffs") worked as transitory municipal employees pursuant to annual and semi-annual

---

[1] Local Rule 56 governs the factual assertions made by the parties in the context of summary judgment. Loc. R. 56; Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). The Rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). The movant must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). The non-movant must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. R. 56(c). The movant may reply and admit, deny, or qualify the opponent's newly-stated facts in a separate statement and by reference to each numbered paragraph. Loc. Rule 56(d). Facts that are properly supported "shall be deemed admitted unless properly controverted." Loc. R. 56(e); P.R. Am. Ins. Co., 603 F.3d 125, 130 (1st Cir. 2010).

[2] The Partido Nuevo Progresista ("PNP") and the Partido Popular Democrático ("PPD") are referred to in English as the New Progressive Party ("NPP") and the Popular Democratic Party ("PDP"), respectively. The Court adopts the Spanish names and acronyms for the relevant political parties.

employment contracts.[3]  With the exception of Velázquez, every plaintiff claims to be affiliated with the PPD.[4]  Velázquez, however, maintains that "[t]here's a presumption she's a member of the [PPD] because her husband is a member of the [PPD]." (Docket No. 111, Ex. 6 at p. 17.)

During Molina's tenure as mayor, the plaintiffs' transitory employment contracts were not renewed. (Docket No. 112 at p. 3.) On February 13, 2015, plaintiffs commenced this civil action, contending that "the adverse employment actions executed by Defendants were motivated by Plaintiffs' political affiliation." (Docket No. 1 at p. 4.)  The third amended complaint sets forth three causes of action pursuant to: (1) 42 U.S.C. section 1983 ("section 1983") for an alleged violation of the First Amendment, (2) sections 1, 2, 4, 6, and 7 of Article II of the Puerto Rico Constitution, and (3) Articles 1802 and 1803 of the Puerto Rico Civil Code, Laws of P.R. Ann. tit. 31, §§ 5141, 5142.  Id. at pp. 55—57.  On July 2, 2018, the defendants moved for summary judgment as to all claims set forth by the plaintiffs. (Docket

---

[3] See Docket No. 111; Román, Ex. 1 at p. 4; Ortiz, Ex. 4 at p. 4; Velázquez, Ex. 6 at p. 5; Rodríguez, Ex. 9 at p. 7; Tobi, Ex. 11 at pp. 7—8; Vélez, Ex. 14 at p. 4; Homs, Ex. 16 at p. 3; Ocaña, Ex. 19 at p. 3; Denis, Ex. 21 at p. 7; Marrero, Ex. 23 at p. 6.

[4] See Docket No. 111; Román, Ex. 1 at pp. 10-11; Ortiz, Ex. 4 at p. 12; Rodríguez, Ex. 9 at p. 10; Tobi, Ex. 12 at p. 14; Vélez, Ex. 14 at p. 9; Homs, Ex. 18 at p. 12; Ocaña, Ex. 19 at p. 14; Denis, Ex. 21 at p. 13; Marrero, Ex. 23 at p. 15.

Nos. 111 and 112.)  The plaintiffs opposed summary judgment, and the defendants replied.  (Docket Nos. 125 and 131.)  Subsequently, the plaintiffs filed a surreply with leave from the Court.  (Docket No. 139.)  The parties concur that the claims against Edgardo Pérez-Pérez are meritless.  (Docket No. 112 at p. 38; Docket No. 125 at p. 2.)  Accordingly, the Court **GRANTS** the defendants' motion for summary judgment regarding the claims asserted against Pérez.  (Docket Nos. 111 and 112.)  On November 1, 2016, plaintiff Ángel Oquendo-Maldonado ("Oquendo") moved to dismiss his claims against the defendants.  (Docket No. 50.)  The Court **GRANTS** Oquendo's motion, and will enter a partial judgment reflecting the dismissal of Oquendo's claims against the defendants.

## II.  Jurisdiction

Jurisdiction exists in this civil action pursuant to 28 U.S.C. section 1331, because plaintiffs seek relief pursuant to 42 U.S.C. section 1983 ("section 1983"), a federal statute.  28 U.S.C. § 1331.

## III. Summary Judgment Standard

A court will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party.  A

fact is material if it has the potential of determining the outcome of the litigation." Dunn v. Trs. of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted).

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted). The party moving for summary judgment shoulders the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion has been presented, the burden shifts to the nonmovant "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (citation omitted). Summary judgment is appropriate if the nonmovant's case rests merely upon "conclusory allegations, improbable references, and unsupported speculation." Forestier-Fradera v. Municipality of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006).

## IV. First Amendment Cause of Action

The plaintiffs assert that the Municipality of Arecibo, Molina, and other municipal employees are liable for political discrimination pursuant to 42 U.S.C. section 1983. (Docket No. 102

at p. 15.)  Section 1983 establishes "a private right of action for violations of federally protected rights." Marrero-Gutiérrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007).  The Supreme Court has held that section 1983 does not confer substantive rights, "but provides a venue for vindicating federal rights elsewhere conferred." Marrero-Sáez v. Municipality of Aibonito, 668 F. Supp. 2d 327, 332 (D.P.R. 2009) (citing Graham v. M.S. Connor, 490 U.S. 386, 393-94 (1989)).  Section 1983 imposes civil liability on state officials "acting under color of state law." Elena v. Municipality of San Juan, 677 F.3d 1, 10 (1st Cir. 2012).  Puerto Rico is a state for the purpose of section 1983.  Id. (citing Deniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002)).  A municipality is a "person" pursuant to section 1983.

## A.  Political Discrimination

The First Amendment right to freedom of speech and association provides non-policymaking public employees with protection from adverse employment decisions based on their political affiliation. Padilla-García v. Guillermo-Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000); see also, Rutan v. Republican Party,

497 U.S. 62, 75 (1990).[5]  The Mount Healthy burden-shifting

framework governs the Court's analysis.  Mount Healthy City Sch.

Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (applying

the two-part burden shifting analysis to a free speech claim); see

also Padilla-García, 212 F.3d at 74.

To establish a *prima facie* case pursuant to the First

Amendment, the plaintiff must demonstrate that (1) the plaintiff

and the defendant belong to opposing political affiliations; (2)

the defendant has knowledge of the plaintiff's affiliation; (3) a

challenged employment action occurred; and (4) political

affiliation was a substantial or motivating factor behind the

challenged employment action.  Martin-Vélez v. Rey-Hernández, 506

F.3d 32, 39 (1st Cir. 2007) (citation omitted).[6]  A plaintiff

---

[5] The protections enshrined in the First Amendment extend to the plaintiffs
irrespective of their former status as transitory employees. (Docket No. 102.)
The First Circuit Court of Appeals has held that a "municipality may not allow
transitory employees' contracts to expire if the primary motive is to punish
them for their political affiliation." Nieves-Villanueva v. Soto-Rivera, 133
F.3d 92, 98 (1997) (citing Chéveres-Pacheco v. Rivera-González, 809 F.2d 125,
127-29 (1st Cir. 1987)); see also, Borges-Colón v. Román-Abreu, 438 F.3d 1, 18
(1st Cir. 2006) ("The fact that a transitory employee does not have a reasonable
expectation of renewal in his or her employment does not defeat a First Amendment
claim") (internal citation omitted).

[6] The defendants do not dispute the first and third elements of the plaintiffs'
*prima facie* political discrimination claim.  The Partido Nuevo Progresista and
the Partido Popular are opposing political parties in Puerto Rico.  See
Guillemard-Ginorio v. Conteras-Gómez, 585 F.3d 508, 511 (1st Cir. 2009).  The
nonrenewal of a transitory employment contract constitutes an adverse employment
action.  See Morales-Tañón v. P.R. Elec. Power Auth., 524 F.3d 15, 19 (1st Cir.
2008) ("Adverse employment action includes not only discharge and demotions,
but also a government entity's refusal to promote, transfer, recall after
layoff, or even hire an employee.") (citation and internal quotation marks
omitted).

alleging political discrimination shoulders the threshold burden of producing sufficient evidence, whether direct or circumstantial, that he or she engaged in constitutionally protected conduct and that his or her political affiliation was a substantial or motivating factor behind the challenged employment action. González-Blasini v. Family Dept., 377 F.3d 81, 85 (1st Cir. 2004); Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998). "The plaintiff must point to evidence on the record which, if credited, would permit a rational fact-finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." González-Blasini, 377 F.3d at 85 (quoting LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996) (quotation marks omitted).

        The burden then shifts to the defendant, who must articulate a nondiscriminatory basis for the adverse employment action and establish by a preponderance of the evidence that he or she would have taken the same employment action regardless of the plaintiff's political affiliation. Padilla-García, 212 F.3d at 74; Rodríguez-Ríos, 138 F.3d at 24. The Mt. Healthy defense, "ensures that a plaintiff-employee who would have been dismissed in any event on legitimate grounds is not placed in a better position merely by virtue of the exercise of a constitutional right irrelevant to the adverse employment action." Acevedo-Díaz v.

Aponte, 1 F.3d 62, 66 (1st Cir. 1993) (citations omitted).  The evidence by which the plaintiff establishes a *prima facie* case may suffice for a fact-finder to infer that the defendant's proffered nondiscriminatory ground for the adverse employment action is pretextual, and "check" summary judgment.  Padilla-García, 212 F.3d at 78.

Evidence of a highly-charged political environment coupled with the parties' competing political persuasions may suffice to show discriminatory animus.  Rodríguez-Ríos, 138 F.3d at 24; see also Padilla-García, 212 F.3d at 75-76 (affirming denial of summary judgment where the defendants knew of plaintiffs' party affiliation, plaintiff was a conspicuous party member and witnesses testified regarding defendant's desire to humiliate plaintiff).  Additionally, mere temporal proximity between an adverse employment action and a change of administration is insufficient to establish discriminatory animus.  Acevedo-Díaz, 1 F.3d at 69.

   **B.   Knowledge of Political Affiliation**

The predominant argument set forth in the defendants' motion for summary judgment concerns the plaintiffs' *prima facie* claim of political discrimination.  (Docket No. 112.)  The defendants deny either that they knew plaintiffs' political affiliation, or that political animus motivated their decision

regarding the plaintiffs' employment contracts.  <u>Id.</u>  The
defendants maintain that the plaintiffs have "not established be
it with direct or circumstantial evidence that defendants knew
[the plaintiffs'] political affiliation, that the same was the
substantial or motivating factor in the non-renewal of [their]
transitory contract[s]."  (Docket No. 112 at pp. 14—29.)  The Court
disagrees.  A rational jury could find both that the defendants
knew of the plaintiffs' political affiliation, and acted with
animus.

        At the time their employment with Arecibo ended, the
plaintiffs worked in one of three departments:  (1) the Municipal
Development Department, (2) the Housing Department, or (3) the
Yesterday's Youth Center.  (Docket No. 112 at p. 3.)  Molina claims
that "[a]fter the filing of the Complaint, [he] was informed that
[the plaintiffs are] affiliated with the PPD."  (Docket No. 111,
Ex. 30 at p. 6.)[7]  According to the plaintiffs, however, Molina's
subordinates prepared a list of employees affiliated with the PPD

---

[7] Pursuant to Puerto Rico law, the actions of a mayor "constitut[e] the official policy of the municipality."  <u>Cordero v. De Jesús-Méndez</u>, 867 F.2d 1, 7 (1st Cir. 1989).  Accordingly, a Puerto Rico municipality "is liable as a matter of law for an unconstitutional discharge of its municipal employees by the Mayor." <u>Id.</u>; <u>see</u> <u>Rivera-Torres v. Ortiz-Vélez</u>, 341 F.3d 86, 103 (1st Cir. 2003) ("Therefore, as the district court correctly realized, the liability of the municipality could not be divorced from the mayor's liability in his official capacity."); <u>Concepción v. Municipality of Gurabo</u>, 560 F. Supp. 2d 139, 142 (D.P.R. 2008) (Besosa, J.) (holding that "municipality liability attaches where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered").

at the mayor's request, the mayor frequently made disparaging comments regarding the PPD, and the mayor refused to renew their employment contracts because they affiliated with the PPD. (Docket No. 126.) The evidence below raises a genuine issue of material fact as to whether the defendants knew of plaintiffs' political affiliation.

### 1. The Municipal Development Department

María Rivera-Román and Héctor Román-Ortiz worked for the Municipal Development Department as a janitor and as an inspector, respectively. (Docket No. 111; Ex. 1 at p. 13l; Ex. 4 at p. 4.) Defendant Luis Cruz-Nieves served as the director of the Municipal Development Department. (Docket No. 11, Ex. 25 at pp. 5-6.)

### a. Plaintiff María Rivera-Román

The Municipality of Arecibo hired Rivera-Román in the early 1980's. (Docket No. 111, Ex. 1 at p. 4.) She claims that "throughout [her] long tenure as a transitory employee in the municipality of Arecibo, [her] political affiliation and support for the [PPD] was well known by [her] co-workers and supervisors." (Docket No. 111 Ex. 3 at p. 11.) Before Molina's administration, defendant Hiram Cruz-González served as director of the Municipal Development Department. Id. Rivera-Román inquired whether Cruz-González stopped asking her to bring him coffee because she

was member of the PPD.  Id.  Cruz-González answered:  "How do you know about this?  Are you a mind reader?"  Id.

### b.    Plaintiff Héctor Román-Ortiz

The Municipality of Arecibo hired Román-Ortiz in 2000, first as an accountant and later as a housing inspector. (Docket No. 111, Ex. 4 at p. 3.)  According to Román-Ortiz, Cruz-Nieves observed him participate in a [PPD] caravan during the 2012 mayoral campaign.  (Docket No. 111, Ex. 4 at p. 16.) Román-Ortiz claims that Molina is aware of Román-Ortiz's affiliation with the PPD because, Molina is "the head of Town Hall, he knows all the supervisors and directors, and through the supervisors and directors, they know who is affiliated to what party." (Docket No. 111, Ex. 4 at p. 20.)

### 2.    The Housing Department

Emma Vélez-Serrano, Saúl Vélez-Rodríguez, Alicia Velázquez-Vélez, Johanna Homs-Zeno, and Luis Ocaña-Rivera worked in the Housing Department.  (Docket No. 111, Vélez-Serrano, Ex. 14 at p. 4; Vélez-Rodríguez, Ex. 9 at p. 4; Velázquez-Vélez, Ex. 6 at p. 6; Homs, Ex. 16 at p. 3; Ocaña, Ex. 19 at p. 3.)  Defendant Wesley Rivera served as the Director of the Housing Department. (Docket No. 111, Ex. 6 at p. 14.)

### a.  Plaintiff **Emma Vélez-Serrano**

The Municipality of Arecibo hired Vélez-Serrano in 1985.  (Docket No. 111, Ex. 14 at p. 3.)  She is a member of PPD, and has "always been in [PPD] campaigns, committees, caravans," worked as a polling officer, sold tickets, and participated in walk-a-thons.  (Docket No. 111, Ex. 14 at pp. 9 and 10.)  Vélez-Serrano claims that during the 2012 mayoral election, Molina visited her at her house.  (Docket No. 126, Ex. 1 at p. 47.)  Molina allegedly told Vélez-Serrano "not to worry, that [Molina] came to work for everyone and that [Vélez-Serrano] should give him an opportunity to give him [her] vote."  Id.

Rivera, her immediate supervisor, allegedly informed Vélez-Serrano that her employment "contract had not been renewed because [Molina] did not want any 'Populares' there.  And, [Molina] told [Rivera] to make a list of the 'Populares' in the office, and [Vélez-Serrano] was among them."  (Docket No. 111, Ex. 14 at p. 18.)  Rivera allegedly qualified his statement to Vélez-Serrano, however, stating that "[Rivera] did not agree with this, [Rivera] tried to help [Vélez-Serrano], but when [Molina] gets something inside his head, and when [Molina] said no, it was no."  Id. at p. 19.  Vélez-Serrano allegedly attempted to reason with Rivera, emphasizing her almost thirty-year tenure as a public

servant.  (Docket No. 111, Ex. 14 at p. 19.)  According to Vélez-Serrano, Rivera allegedly remained silent.  Id.

In July 2014, Rivera purportedly told Vélez-Serrano that he "went to fight for [Housing Department employees] to get a salary increase," but that instead Molina "sent [Rivera] five new employees to our office.  [Molina] said those five employees came to take away jobs and that [Vélez-Serrano] should be careful."  (Docket No. 126, Ex. 1 at p 48.)  Rivera allegedly told Vélez-Serrano that he refrained from offering to sell her tickets to PNP political events because Rivera knew Vélez-Serrano would not purchase the tickets.  (Docket No. 126, Ex. 1 at p. 48.)  Furthermore, Rivera allegedly requested that Vélez-Serrano and other Housing Department employees distribute newspapers to publicize Molina's accomplishments.  (Docket No. 126, Ex. 1 at p. 48.)  Vélez-Serrano allegedly replied, "[i]f people see me there handing out a newspaper of Carlos Molina, knowing I am a [PPD]'er, they'll run me over with their cars."  Id.  After Vélez-Serrano learned that her employment contract was not renewed, Rivera allegedly told her and other former Housing Department employees that Molina "wanted to know who were the [PPD'ers] in our office, and that he had to do it [not renew their contracts]."  Id. at p. 49.

**b.  Plaintiff Saúl Vélez-Rodríguez**

The Municipality of Arecibo hired Vélez-Rodríguez in 1985 as a technician. (Docket No. 111, Ex. 9 at p. 3.) He participated in PPD organized events, such as caravans and parties. (Docket No. 111, Ex. 9 at p. 11.) He also purchased PPD raffle tickets and visited the PPD committee center. Id.

Vélez-Rodríguez claims that defendant Rivera knew that he affiliated with the PPD, because "in the office, everybody knows who, practically who belongs to what party." (Docket No. 111, Ex. 9 at p. 13.) According to Vélez-Rodríguez, Rivera informed him that "[Rivera] did not invite [Vélez-Rodríguez] to political activities because [Vélez-Rodríguez] was a 'Popular.'" (Docket No. 111, Ex. 9 at p. 14.) Vélez-Rodríguez asserts that Rivera said that Vélez-Rodríguez and Ocaña were "[PPD]'s but were good people." (Docket No. 126, Ex. 1 at p. 42.) On July 7, 2014, Rivera purportedly stated to Vélez-Rodríguez that "[Molina] was an asshole and that without any reason he had refused to validate the signed contracts." Id. at p. 43. On July 15, 2014, Vélez-Rodríguez met with Rivera outside of City Hall. Id. Rivera allegedly told Vélez-Rodríguez that "the one who didn't renew [his] contract was [Molina] and not him, and that [Molina] had asked

[Rivera] to identify who from the office was a [PPD]'er and he had to tell him who were the ones who belonged to the Popular Democratic Party and that [Vélez-Rodríguez] was in the group." Id.

### c.   Plaintiff Alicia Velázquez-Vélez

The Municipality of Arecibo hired Velázquez-Vélez in 1993.  (Docket No. 111, Ex. 6 at p. 4.)  After Molina's electoral victory, defendant Rivera allegedly directed Velázquez-Vélez "to identify employees who were 'Populares', and at that moment [Rivera] told [her] that there were five employees in the office who were going to be left without employment and that [Velázquez-Vélez] was one of those employees."  (Docket No. 111, Ex. 6 at p. 28.)  Rivera allegedly identified Homs, Vélez-Serrano, Vélez-Rodríguez, and Ocaña as "those employees" subject to nonrenewal.  (Docket No. 126, Ex. 1 at p. 30.)  Velázquez-Vélez, however, concedes that she never saw the list, or that she was present when Rivera allegedly identified members of the PPD to Molina.  (Docket No. 111, Ex. 6 at p. 19.)

Velázquez-Vélez claims that during business hours Rivera requested that Housing Department employees purchase tickets to political events.  (Docket No. 126, Ex. 1 at p. 30.)  Velázquez-Vélez asserts that in 2014, she and Vélez-Serrano spoke with Rivera outside of City Hall.  (Docket No. 126 at p. 30.)

Rivera allegedly informed Velázquez-Vélez and Vélez-Serrano that "he had been asked to identify the [PPD]'s in our office, that he had to follow orders." Id. Velázquez-Vélez also asserts that Rivera told her that "not voting is the same as being against Mayor Molina." (Docket No. 126, Ex. 1 at p. 30.)

After Velázquez-Vélez's employment with Arecibo ended, she claims that she visited Rivera at his office to deliver a letter from her and other former employees. (Docket No. 126, Ex. 1 at p. 30.) The letter challenged the nonrenewal of their employment contracts, alleging that the municipality based its employment decision on the plaintiffs' political affiliations. Id. Velázquez-Vélez asserts that Rivera asked her whether she was recording him. Id. She answered no. Id. Rivera then purportedly informed Velázquez-Vélez that he "believed the whole situation was pointless because [Velázquez-Vélez] had been his secretary, had read his e-mails, and [Velázquez-Vélez] was aware that there was enough money in the program to pay [the former employees]." (Docket No. 126, Ex. 1 at p. 30.)

### d.    Plaintiff Johanna Homs-Zeno

The Municipality of Arecibo hired Homs in 2001 as an investigator, and later as a technician. (Docket No. 111, Ex. 16 at p. 5.) On several occasions, Rivera allegedly told Homs that "[PPD'ers] are sons of bitches and are not going to heaven

and that [PNP'ers], however, had won heaven." (Docket No. 126, Ex. 1 at p. 54.) According to Homs, Rivera requested that she retire to "leave the position open for an unemployed [PNP'er]." Id. Rivera purportedly told Homs that "[PPD'ers] are not worth a thing," and that "[PPD'ers] should be set on fire." Id. at p. 55. In 2014, Rivera allegedly told Homs that if she wanted to continue working, Homs "had to give [her] vote to [Molina]." Id. Rivera also allegedly told Homs the "sons of bitches of the Mayor and Memo didn't want [their] contracts to be renewed. That [Rivera] was doing all he could to keep [them] there." Id.

### e. Plaintiff Luis Ocaña-Rivera

The Municipality of Arecibo hired Ocaña in 1999 as a housing inspector. (Docket No. 111, Ex. 19 at p. 3.) Rivera allegedly told Ocaña, "[y]ou are good people although you are [PPD'ers]." (Docket No. 126, Ex. 1 at p. 36.) According to Ocaña, Rivera instructed municipal employees to paint bridges and hand out newspapers promoting Molina's accomplishments. Id. The employees refused to do so. Id. Rivera allegedly warned the employees not to "complain if you are left jobless. You are not taking care of your job." Id. Ocaña alleges that on July 7, 2014, Rivera said that he disagreed with Molina's decision, that Molina

was "un cabrón,"[8] "who did not want [PPD'ers] working at the office, and that [Ocaña] should get someone to help [him]." Id. A week later, Rivera stated that he would attempt to convince Molina to renew Ocaña's contract on the condition that Ocaña inform Molina that he "was willing to be punished in some way for having signed the letter sent to [the human resources department] from all plaintiffs, and that would be the way for the Mayor to renew [his] contract." Id.

### 3.  Yesterday's Youth Center

Julissa Marrero, Santos Tobi-Molina, and Edwin Denis-Mercado worked at the Yesterday's Youth Center. (Docket No. 111, Marrero, Ex. 23 at p. 4; Tobi, Ex. 11 at p. 3; Denis, Ex. 21 at pp. 3—4.) Defendants Hiram Cruz-González and Janet Rodríguez-Colón served as the co-directors of the Yesterday's Youth Center in 2014. (Docket No. 111, Ex. 11 at p. 6.)

### a.  Plaintiff Julissa Marrero-Román

The Municipality of Arecibo hired Marrero as a secretary for the Yesterday's Youth Center. (Docket No. 111, Ex. 23 at p. 4.) Marrero claims that Cruz-González observed her participate in a PPD caravan. Id. at p. 18. The next day, Marrero alleges that Cruz-González said, "I saw you." Id. Marrero

---

[8] "Cabrón" may be translated as asshole in this context. Gerald v. Univ. of P.R., 707 F.3d 7, 22 (1st Cir. 2013).

allegedly answered, "of course, I'm a member of the Popular Democratic Party and you know it." Id.

### b.    Plaintiff Santos Tobi-Molina

The Municipality of Arecibo hired Tobi as a driver for the Yesterday's Youth Center in 2005. (Docket No. 111, Ex. 11 at p. 3.) Although Molina and Tobi never discussed their political views, Tobi claims that Molina observed him in a PPD "sound truck doing promotion or promoting, campaigning, advertising." (Docket No. 111, Ex. 11 at p. 14.) During the primaries, Molina allegedly visited Tobi's house, provided Tobi with a brochure, and said "[t]hank you, even though I know we are in different parties, thank you for having received me." (Docket No. 111, Ex. 11 at p. 15.) According to Tobi, Rivera once stated that "[he] wanted to see what us 'populetes' [sic] would do once Carlos Molina won the elections." (Docket No. 126, Ex. 1 at p. 20.) Tobi and Denis spoke with Pérez after learning that their contracts were not renewed. Id. at p. 21. In response, Pérez allegedly asked Tobi and Denis if they were "[PPD'ers]," and confided in Tobi and Denis that "he was not supposed to be telling [them] that but that we should go talk to Janet and she had to tell [them] why." (Docket No. 126, Ex. 1 at p. 21.)

### c.  Plaintiff Edwin Denis-Mercado

The Municipality of Arecibo hired Denis as a driver for the Yesterday's Youth Center in 2000.  (Docket No. 111, Ex. 21 at p. 5.)  Denis served as a ward leader for the PPD, worked at the polling stations, sold PPD raffle tickets, and participated in caravans.  (Docket No. 111, Ex. 21 at p. 14.)  According to Denis, Molina knew he was affiliated with the PPD because Denis "would go by in a caravan and [Molina] would see us, and he would go by the committee and [Molina] would see us."  Id. at p. 21.

## C.  A Genuine Issue of Material Fact Exists Regarding Knowledge of the Plaintiff's Political Affiliation

Construing the entire record in the light most favorable to  the plaintiffs and drawing all reasonable inferences their favor, see Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 779-80 (1st Cir. 2011), the Court concludes that that material issues of fact preclude defendants' motion for summary judgment.  While the defendants deny any knowledge that the plaintiffs affiliated with the PPD, the plaintiffs aver that the defendants compiled a list of political opponents with the intent to purge Arecibo's civil service of PPD affiliated employees.

The Court need not reconcile these contradictory renditions.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge." Lareños En Defensa Del
Patrimonio Historico, Inc. v. Municipality of Lares, 957 F. Supp.
2d 150, 157 (D.P.R. 2013) (Besosa, J.) (denying defendants' motion
for summary judgment because the parties presented contradictory
reasons for imposing restrictions on use of a public plaza) (citing
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)); see
Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st
Cir. 1999) ("credibility determinations are for the factfinder at
trial, not for the court at summary judgment").

        The evidence presented by the plaintiffs suggesting that
the defendants' knew their political affiliation and acted with
political animus "is such that a reasonably jury could resolve the
point in favor of the non-moving party," and "has the potential of
determining the outcome of this litigation." Dunn v. Trs. of Bos.
Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted).
Actions arising pursuant to the First Amendment hardly ever set
forth clear, unequivocal evidence of political animus. See Ocasio-
Hernández v. Fortuño-Burset, 777 F.3d 1, 7 (1st Cir. 2015) (holding
that political discrimination "often turns on an employer's
cloaked motives, [and] can be hard for a worker to prove").
Plaintiffs in political discrimination actions often must rely on
circumstantial evidence. See Martínez-Vélez v. Rey-Hernández, 506
F.3d 32, 44 (1st Cir. 2007) (holding that a reasonable jury could

infer that the defendant was aware of the plaintiff's affiliation with the [PNP] based on evidence that the plaintiff "spoke openly about her political views and sat in the [PNP] portion of the *de facto* segregated cafeteria").[9]   Indeed, maintaining lists of political adversaries is powerful circumstantial evidence of political knowledge and animus.   See Álvarez-Estrada v. Alemañy-Noriega, No. 2011 U.S. Dist. LEXIS 61240 (D.P.R. June 8, 2011) (Besosa, J.) (denying motion for summary judgment in a political discrimination action, because allegations that defendant "ordered lists to be compiled of all personnel affiliated with the [PNP]" created a genuine issue of material fact).

For the purpose of summary judgment, the Court is satisfied that the plaintiffs have asserted "specific facts necessary to take the asserted claim out of the realm of speculative, general allegations." González de Balsini v. Family Dep't., 377 F.3d 81, 86 (1st Cir. 2004).   Accordingly, there is sufficient evidence to create a triable issue as to whether the

---

[9] See also Caraballo-Rivera v. García-Padilla, No. 14-1435, 2017 U.S. Dist. LEXIS 165529 *19 (D.P.R. Oct. 3, 2017) (Domínguez, J.) (denying motion for summary judgment in political discrimination action because, competing accounts regarding a meeting where defendant "disclosed plans to get rid of all [PNP] supporters at La Fortaleza" created a genuine issue of material fact); Santos-Berríos v. Joglar-Pesquera, No. 14-1145, 2016 U.S. Dist. LEXIS 14431 *2 (D.P.R. Feb. 5, 2016) (Delgado-Hernández, J.) (denying motion for summary judgment in a political discrimination action where the defendants prepared and distributed a list identifying plaintiffs' political affiliations and the plaintiffs' contracts were not renewed.)

plaintiffs may establish a *prima facie* claim of political discrimination.

The defendants, for their part, have failed to set forth a nondiscriminatory reason for the nonrenewal of plaintiff's transitory contracts. The defendants state in a conclusory manner that budget reductions and poor performance motivated their employment decisions. (Docket No. 112 at p. 31.) These assertions are deficient pursuant to Mt. Healthy because they fail to "establish by a preponderance of the evidence that they would have taken the same action regardless of the [person's] political affiliation." Padilla-García, 212 F.3d at 77.

Because there are genuine issues of material fact regarding the defendants' knowledge of the plaintiffs' political affiliations, and the defendants' motivations in not renewing the plaintiffs' contracts, the defendants' motion for summary judgment is **DENIED.**

## V. Qualified Immunity

The defendants argue that Molina, Rivera, Cruz-Nieves, Cruz-González, and Rodríguez-Colón are entitled to qualified immunity because the plaintiffs "failed to establish the violation of a constitutional right." (Docket No. 112 at p. 38.) Qualified immunity provides "a safe harbor for public officials acting under the color of state law who would otherwise be liable under [section

1983] for infringing the constitutional rights of private parties." Whitfield v. Meléndez-Rivera, 431 F.3d 1, 6 (1st Cir. 2005). The doctrine "protects government officers and employees from suit on federal claims for damages where, in the circumstances, a reasonable official could have believed his conduct was lawful." Olmeda v. Ortíz-Quiñónez, 434 F.3d 62, 65 (1st Cir. 2006).

The qualified immunity inquiry is a two-part analysis. Maldonado v. Fontanes, 568 F.3d 263, 268-69 (1st Cir. 2009). First, courts examine "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right." Id. at 269. Second, courts inquire "whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. The second part of the qualified immunity analysis is divided into two sub-inquiries:

> (a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official.

Díaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011).

Because a genuine issue of material fact exits regarding "a violation of a constitutional right," the Court need not address the defendants' qualified immunity argument. Maldonado, 568 F.3d

at 268-69 (1st Cir. 2009).  The jury must determine whether the defendants are eligible for qualified immunity.  Accordingly, the defendants' request to invoke the qualified immunity defense is **DENIED WIHTOUT PREJUDICE.**

## VI.  Plaintiffs' Puerto Rico Constitutional Claims

The defendants move to dismiss the plaintiffs' claims pursuant to the Puerto Rico Constitution.  According to the defendants, the plaintiffs "have failed to prove both a *prima facie* case of political discrimination and an adverse employment action attributable to any of the Defendants." (Docket No. 112 at p. 33.) The Puerto Rico Supreme Court has incorporated the Mt. Healthy analysis for political discrimination claims pursuant to the Puerto Rico Constitution.  Ortiz-Rodríguez v. Del Noroeste, No. 14-1529, 2016 U.S. Dist. LEXIS 43740 *36 (D.P.R. Mar. 26, 2016) (Gelpí, J.) (citing Camacho-Torres v. AAFET, 168 D.P.R. 66 (2006)).[10]  Because the plaintiffs' First Amendment claims are sufficient pursuant to the Mt. Healthy analysis, their political discrimination claims pursuant to the Puerto Rico Constitution are also sufficient.

---

[10] The United States Constitution and the Puerto Rico Constitution "essentially protect the same type of conduct, with the Puerto Rico Constitution protecting a broader spectrum of speech." Watchtower Bible Tract Soc'y of N.Y. v. Municipality of Santa Isabel, No. 04-1452, 2013 U.S. Dist. LEXIS 65706 *9 (D.P.R. May 6, 2013) (Gelpí, J.) (citation omitted).

## VII. Plaintiffs' Puerto Rico Civil Code Claims

### A.    Article 1802

The defendants assert that the plaintiffs' Article 1802 claim fails because "a reasonable jury could conclude that damages [if any] asserted by Plaintiffs were not a result of any negligent or culpable employment action by Defendants." (Docket No. 112 at p. 34.)  Article 1802 provides for a cause of action resulting from an individual's negligent act.  Isla Nena Air Servs. V. Cessna Aircraft Co., 449 F.3d 85, 88 (1st. Cir. 2006) (citing P.R. Laws Ann. tit. 31, § 5141).[11]  To prevail on a Puerto Rico negligence claim, plaintiffs must establish three elements:  (1) an injury, (2) a breach of duty, and (3) proximate causation of the injury. Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007) (internal citations omitted).  The plaintiffs cannot "mention a possible argument in the most skeletal way, leaving the Court to do counsel's work, create the ossature for the argument, and put flesh on its bones." U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  Accordingly, the defendants' motion for summary judgment regarding the plaintiffs' Article 1802 claims is **DENIED.**

---

[11] Article 1802 states that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  P.R. Laws Ann. tit. 31, § 5141.

**B.    Article 1803**

The defendants argue that the plaintiffs are precluded from seeking relief pursuant to Article 1803.  (Docket No. 112 at p. 35.)  Article 1803 applies the doctrine of vicarious liability to actions pursuant to article 1802.  P.R. Laws Ann. tit. 31, § 5142.  "Article 1803 provides an exhaustive list of special circumstances in which a party, such as an employer, may be vicariously liable for the torts committed by another person." Fernández-Jorge v. Galarza-Soto, 124 F. Supp. 3d 57, 71 (D.P.R. 2015) (Gelpí, J.) (dismissing claim pursuant to article 1803 because the "[p]laintiffs fail to plead such a special relationship that would allow for vicarious liability").  The most applicable basis of vicarious liability set forth in article 1803 provides that:

> Owners or directors of an establishment or enterprise [who] are likewise liable for any damages caused by their employees in the service of the branches in which the later are employed or on account of their duties.

P.R. Laws Ann. tit. 31, § 5142.[12]  The municipality is not an establishment or enterprise within meaning of article 1803.  See

---

[12] Pursuant to article 1803, (1) parents are liable for the minor children living with them; (2) guardians are liable for the minors or incapacitated persons who are under their authority and live with them; (3) owners or directors of an establishment or enterprise are liable for their employees in the service of the branches in which the latter are employed or on account of their duties; (4) masters or directors of arts and trades are liable for their pupils or apprentices while under their custody; and (5) the Commonwealth of Puerto Rico is vicariously liable under the same circumstances and conditions as those under which a private citizen would be liable. P.R. Laws Ann. tit. 31, § 5142.

Santos-Berríos v. Joglar-Pesquera, No. 14-1145, 2016 U.S. Dist. LEXIS 14431 *11 (D.P.R. Feb. 5, 2016) (dismissing vicarious liability claim against the Puerto Rico Department of Health because "[a] purview of the instances numbered in [article 1803] confirms they are beyond the scope of defendants' profile").[13] Accordingly, the plaintiffs' claim pursuant to article 1803 is **DISMISSED.**

## VII. Conclusion

For the reasons set forth above, the defendants' motion for summary judgment is **DENIED IN PART** and **GRANTED IN PART**. (Docket Nos. 111 and 112.) The claims asserted against defendant Edgardo Pérez-Pérez are **DISMISSED WITH PREJUDICE.** Id. The plaintiffs' claims arising pursuant to article 1803 of the Puerto Rico Civil Code are **DISMISSED WITH PREJUDICE.** The defendants' request to invoke the qualified immunity defense is **DENIED WIHTOUT PREJUDICE.** Ángel M. Oquendo-Maldonado's motion to dismiss his claims against the defendants is **GRANTED,** and his claims against the defendants are **DIMISSED WITH PREJUDICE.** (Docket No. 50.)

Partial Judgment shall be entered accordingly.

Trial remains set for September 4, 2018 at 9:00 a.m.

---

[13] Indeed, the plaintiffs fail to address the defendants' article 1803 argument in their opposition to summary judgment. (Docket No. 125 at p. 10.)

**No later than September 3, 2018 at 12:00 noon**, even though the date is a holiday, the parties will file a joint proposed pretrial order.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 29, 2018.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE